Harry Walter McCUTCHEON, Petitioner,

v.

Dr. George J. BETO, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 66–H–10.

United States District Court
S. D. Texas,
Houston Division.

April 21, 1966.

Harry Walter McCutcheson, pro se.

Waggoner Carr, Atty. Gen. of Texas, Austin, Tex., and Sam R. Wilson, Asst. Atty. Gen. of Texas, Houston, Tex., for respondent.

INGRAHAM, District Judge.

The petitioner, Harry Walter McCutcheon, a prisoner in state custody, filed his petition for the writ of habeas corpus in this court on January 10, 1966. He complains of four convictions received in the Criminal District Court No. 2 of Harris County, Texas. The respondent now moves that the petition be dismissed.

McCutcheon's sole complaint presented to this court is that the State of Texas has refused to make its habeas corpus procedures available to him. For purposes of this motion only, this court will accept as true all factual claims presented by McCutcheon. Even when these fact-

ual claims are accepted as true, they do not establish a constitutional deprivation upon which the writ of habeas corpus could issue.

McCutcheon's claims are as follows: On November 29, 1965, McCutcheon addressed a petition for the writ of habeas corpus to the Honorable J. S. Holleman, Judge of the 9th Judicial District Court of Polk County, Texas. Because Judge Holleman had once represented McCutcheon, he felt that he should not consider the petition. Judge Holleman forwarded the petition for consideration to the Honorable Reginald Bracewell, Judge of the 12th Judicial District of Walker County, Texas, on December 2, 1965. On December 3, 1965, Judge Bracewell returned the petition to McCutcheon, stating his opinion that the petition was without merit and refusing to allow it to be filed in Walker County. Judge Bracewell advised McCutcheon that he could now take the petition directly to the Texas Court of Criminal Appeals for consideration.

On December 6, 1965, McCutcheon sent the petition to the Texas Supreme Court. On December 14, 1965, an "Administrative Assistant" of that court returned the petition to McCutcheon. He first explained that the Texas Supreme Court has no jurisdiction to review criminal cases and that the Texas Court of Criminal Appeals (as Judge Bracewell had advised him) is the proper appellate court. He further indicated that he sent the petition over to the Texas Court of Criminal Appeals, which court replied that it had denied an earlier petition by McCutcheon presenting the same grounds and that Judge Bracewell had rendered a correct decision.

At this point McCutcheon came running to this court claiming that Texas had denied him its habeas corpus procedure, and consequently he should be set free immediately.

### I.

■ In the first place, there is no federal constitutional requirement that the State of Texas have any habeas corpus procedures at all. If, for example, the State of Texas had no habeas corpus procedures, this fact alone would not entitle every person in the custody of the Texas Department of Corrections to immediate release; it would not of itself violate every prisoner's federal constitutional rights.

■ Only if a person is in state custody in violation of his federal constitutional rights does state habeas corpus procedure become relevant. Such a person would be entitled to habeas corpus relief in federal court if the state did not give him relief through some state procedure. It is the failure of the state to grant relief *when relief is due* which gives rise to federal habeas corpus relief. The mere failure of the state to ascertain whether relief is due is not of itself a federal constitutional deprivation.

The role of state habeas corpus proceedings is most frequently considered in connection with the doctrine of exhaustion of state remedies. Under 28 U.S.C.A. § 2254, federal habeas corpus relief is not available where due unless in addition:

> "it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

■■ The exhaustion principle is a matter of comity. Whippler v. Balkcom, 342 F.2d 388, 390 (5 C.A. 1965). Federal habeas corpus proceedings have long been an irritant in federal-state relations, and Section 2254's exhaustion principle represents an attempt to minimize the frictions. See Professor Moore's discussion, 1A Moore's Federal Practice, Section 0.230(2) at 2704–2710. The exhaustion principle permits the state every opportunity to enforce federal constitutional rights without interference by federal courts. While the federal Constitution makes no demand that the state provide proceedings such as habeas cor-

pus, the federal Congress encourages the state to do so by directing that federal courts await the outcome of all state procedures. If a state court finds that a petitioner's federal constitutional rights have been violated and affords an adequate remedy, no federal court becomes involved at all. If a state court conducts a plenary hearing and denies a habeas corpus petition, a federal court may review the state court proceedings. If the procedures and fact findings of the state court meet the standards of Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), a federal court may adopt the fact findings without holding a hearing. A good example is the case of Washburn v. State of Texas, C.A. 65–H–295, S.D. Tex., September 13, 1965. The Texas courts gave Washburn a plenary hearing and denied his habeas corpus petition. This court reviewed the state proceedings, adopted the state court findings of fact, ascertained that proper federal constitutional standards had been applied, and denied the petition.

However, whatever interference federal habeas corpus proceedings cause in the whole machinery of state criminal law and procedure has been largely due to the failure of the states to accept their responsibilities in the habeas corpus area. Of the hundreds of habeas corpus petitions heard in federal courts, practically none have been given hearings in state courts as was done in Washburn. Federal courts are being forced to become just another step in the state criminal process. Convicts are coming to think of federal courts as a normal part of the appellate process, fancying that they can receive "new trials". Not only does this burden the dockets of federal courts, depriving other litigants of trials, but it also represents another shift in the locus of activity and responsibility from state to federal authority.

Federal courts thus become involved in state criminal matters. It is the responsibility of federal courts to insure that no persons are held in state custody in violation of their federal constitutional rights. Doubtless, ever-expanding concepts of federal constitutional rights promulgated by federal courts also overexpand federal activity and responsibility in state criminal matters.

Whatever dimunition of so-called "States' rights" which may have occurred has been in large measure the result of default by the states. Section 2254 provides a framework within which the states themselves can shoulder a greater responsibility in enforcing federal constitutional rights in their criminal processes. Federal courts could then assume a far less prominent role, enforcing the standards of Townsend v. Sain. To assume this responsibility would require state courts to devote the time and effort required to give their petitioners full hearings where constitutional deprivations are alleged. The federal Constitution makes no such demand, but it is certain that continued default will bring corresponding activity in federal courts.

## II.

Although the State of Texas is under no federal constitutional constraint to afford habeas corpus proceedings, it might be argued that if Texas does offer habeas corpus procedures, it must make them available to its citizens without "invidious discriminations". Texas does have a habeas corpus procedure, see 1 Vernon's Annotated Texas Code of Criminal Procedure, Articles 113–176. It might be argued if McCutcheon was denied normal habeas corpus procedures in Texas, and such denial amounted to invidious discrimination, his federal constitutional rights have been violated.

Such an argument devolves from the analogy of the availability of state appeal procedures. No state is required by the federal Constitution to have any appellate machinery. However, the Supreme Court has held that once appellate review is established, a state must make it available without "invidious discrimination". Griffin v. People of State of Illinois, 351 U.S. 12, 18, 76 S.Ct. 585, 100 L.Ed. 891 (1956). This is required by both the "due process" and "equal protection" clauses of the Constitution.

This court knows of no instance where this principle has been expanded to encompass collateral procedures such as habeas corpus. No decision is necessary on this point, for McCutcheon's petition was handled in full accordance with Texas habeas corpus procedure.

Article 119 of the Texas Code of Criminal Procedure controls the procedures of habeas corpus after conviction. The writ must be made returnable to the Texas Court of Criminal Appeals. Ex parte Hubbard, 154 Tex.Cr.R. 57, 225 S.W.2d 196 (1949), outlines the practice under Article 119. A petitioner takes his writ to a district judge. The district judge may permit the application to be filed, develop the facts and certify the case to the Texas Court of Criminal Appeals for final determination. Alternately, the district judge may refuse the writ.

Judge Bracewell's action in refusing McCutcheon's petition was therefore entirely consistent with Texas habeas corpus practice.

Under Ex parte Hubbard, McCutcheon could proceed in several ways; he could take his petition to another district judge or directly to the Texas Court of Criminal Appeals. In fact, McCutcheon did neither, although Judge Bracewell advised him that he could now go directly to the Texas Court of Criminal Appeals. McCutcheon instead attempted to appeal to the Texas Supreme Court. Ex parte Hubbard squarely holds that there is no appeal from a district judge's refusal to accept the writ.

Apparently, McCutcheon was given more consideration than Texas law or practice requires, for the Texas Supreme Court informally sent the petition to the Texas Court of Criminal Appeals, which sent it back saying the petition contained no merit. McCutcheon cannot complain that the latter court did not send him a certified judgment, for he never presented his petition to that court.

In summary, McCutcheon has been dealt with by the Texas courts in complete accordance with Texas habeas corpus procedure. He has not been discriminated against in any way.

Far from having been denied any federal constitutional rights, this court doubts that McCutcheon has even exhausted his state remedies so as to bring the grounds of his original petition before this court. Whether he has is of no consequence, for he alleges nothing here other than denial of state habeas corpus procedures.

Petitioner is no stranger to this court. His habeas corpus petitions were denied or dismissed in each of the following cases:

1. McCutcheon v. Beto, C.A. 63–H–511, Affirmed on appeal, 5 Cir., 327 F.2d 228.
2. McCutcheon v. Beto, C.A. 64–H–91, Appeal dismissed.
3. McCutcheon v. Beto, C.A. 65–H–350.

Respondent's motion to dismiss is granted. This is a final judgment.

True copies hereof will be forwarded by the clerk to the petitioner and the Attorney General of Texas.